**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| **MEMBERSELECT INSURANCE COMPANY,** a/s/o **CHRIS** AND **RENATA LOIOTILE**, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No.: |
| vs. | ) ) | <u>JURY TRIAL DEMANDED</u> |
| **ELECTROLUX HOME PRODUCTS, INC**, a Delaware corporation, | ) ) ) | |
| SERVE: The Corporation Trust Co. Corporation Trust Center 1209 Orange Street Wilmington, DE 19801 | ) ) ) ) ) ) | |
| and | ) ) | |
| **SEARS HOLDINGCORPORATION**, a Delaware corporation, | ) ) ) | |
| SERVE: The Corporation Trust Co. Corporation Trust Center 1209 Orange Street Wilmington, DE 19801 | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## COMPLAINT

NOW COMES Plaintiff, MEMBERSELECT INSURANCE COMPANY, as the subrogee

of its insured CHRIS AND RENATA LOIOTILE, by and through its undersigned attorney, files

this Complaint for damages against the Defendants, ELECTROLUX HOME PRODUCTS, INC.

and SEARS HOLDING CORPORATION, states as follows:

## JURISDICTION AND VENUE

1.    Plaintiff, MemberSelect Insurance Company (hereinafter "MemberSelect"), is a property and casualty insurer organized and existing under the laws of Michigan with its principal place of business located at 1 Auto Club Drive, Dearborn, Michigan 48126, which, at all times material hereto, was engaged in the business of insurance and was licensed to do business in Illinois, and at all times relevant had a property casualty insurance policy in full force and effect providing insurance coverage to its named insured Chris and Renata Loiotile, for their property located at 1325 West Mulloy Drive, Addison, Illinois 60101.

2.    Plaintiff is therefore a citizen of Michigan for the purposes of diversity jurisdiction.

3.    Upon information and belief, Defendant, Electrolux Home Products, Inc. (hereinafter "Electrolux"), is a Delaware corporation with its principal place of business located at 10200 David Taylor Drive, Charlotte, North Carolina, which, at all times material hereto, was engaged in the business of designing, manufacturing and/or distributing household appliances sold throughout the United States, including this judicial district, in its own name and under the Kenmore name.

4.    Defendant Electrolux is therefore a citizen of Delaware and North Carolina for the purposes of diversity jurisdiction.

5.    Upon information and belief, Defendant, Sears Holding Corporation (hereinafter "Sears"), is a Delaware corporation with its principal place of business located at 3333 Beverly Road, Hoffman Estates, Illinois, which, at all times material hereto, was engaged in the business of designing, manufacturing, selling, marketing, and servicing Kenmore brand products throughout the United States, including this judicial district.

6.     Defendant Sears is therefore a citizen of Delaware and Illinois for the purposes of diversity jurisdiction.

7.     The matter in controversy exceeds, exclusive of interest and costs, the sum of Seventy-Five Thousand Dollars ($75,000.00), and this court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, *et seq.*

8.     Venue is proper under 28 U.S.C. §§ 1391(b) and 1391(c) in that a substantial part of the events giving rise to the claims asserted herein occurred in and caused damage in Addison, Illinois.

## COMMON ALLEGATIONS

9.     At all times material hereto, MemberSelect had an insurance policy in full force and effect under Policy No. HOM016092195 (hereinafter "Policy") that provided fire and casualty insurance to its named insured Chris and Renata Loiotile, for their property located at 1325 West Mulloy Drive, Addison, Illinois.

10.    Upon information and belief, at all times material hereto, Electrolux designed, manufactured, assembled, inspected, tested, distributed, and placed into the stream of commerce clothes washers and dryers to be marketed and sold by Sears under the Kenmore name.

11.    Upon information and belief, at all times material hereto, Sears designed, designed, inspected, tested, marketed, distributed, and placed into the stream of commerce clothes washers and dryers under the Kenmore name.

12.    On or about July 1, 2003, the Loiotiles purchased a Kenmore stacked clothes washer and dryer combination, with the clothes dryer bearing model number 41793142201 (hereinafter the "subject dryer"), and the clothes washer bearing model number 41743142200; the units were sold and installed by Sears.

13.     On or about March 24, 2010, the subject dryer malfunctioned, causing a sudden and highly dangerous fire in the Loiotiles' home that presented the likelihood of injury to the Loiotiles' other property.

14.     As a result of the fire, the Loiotiles submitted a claim under their Policy with MemberSelect for damage to the subject premises, their personal property, and alternative living expenses, and in compliance with the terms and conditions of the Policy, MemberSelect has made payments to the Loiotiles for at least $524,689.34.

15.     Pursuant to the terms and conditions of the Policy, and in accordance with the common law principles of legal and equitable subrogation, MemberSelect is subrogated to the rights, claims and causes of action of the Loiotiles against Electrolux and Sears.

## COUNT I - STRICT LIABILITY (Electrolux)

Plaintiff incorporates by reference each and every allegation contained in paragraphs 1 through 15 of Plaintiff's Complaint as if they were specifically repeated herein and further complains against Electrolux as follows:

16.     Upon information and belief, prior to July 1, 2003, Electrolux designed, manufactured, assembled, tested, inspected, distributed and/or introduced into the stream of commerce the subject dryer to be offered for sale to the general public and consumers, including the Loiotiles, in the ordinary course and scope of its business.

17.     The subject dryer was purchased and used by the Loiotiles in the condition it was designed, manufactured, assembled, tested, inspected, and distributed by Electrolux.

18.     At the time the subject dryer left Electrolux's possession and control, it was unreasonably dangerous, unsafe, and defective.

4

19.     Upon information and belief, on and before March 24, 2010, the subject dryer was in a condition unknown to the Loiotiles which was unreasonably dangerous, unsafe, and defective in light of its foreseeable and intended use in that:

a.      It was designed, manufactured and/or assembled in such a way as to present a fire hazard;

b.      It was designed, manufactured and/or assembled to permit lint to accumulate near the gas burner, presenting a fire hazard;

c.      It was designed, manufactured, and/or assembled with the gas burner near an area of the dryer where lint accumulates, presenting a fire hazard;

d.      It was designed, manufactured and/or assembled to permit lint, after it became ignited, to then come into contact with the combustible materials within the dryer cabinet;

e.      It was designed, manufactured and/or assembled with improper combustible materials;

f.      It failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner;

g.      It lacked sufficient safeguard and/or safety features to prevent the dryer from igniting;

h.      It lacked sufficient safeguard and/or safety features to prevent lint accumulation near the gas burner;

i       It lacked sufficient safeguards and/or safety features to prevent lint, after it became ignited, to come into contact with combustible materials within the dryer cabinet;

j.      Electrolux failed to properly inspect and test the dryer for the potential to cause a fire before introducing the product into the stream of commerce;

k.      Electrolux failed to warn consumers regarding the potential for lint accumulation near the gas burner;

l.      Electrolux failed to warn the Loiotiles of a known fire hazard with the dryer and/or a fire hazard a reasonably prudent manufacturer should have learned or known about; and

m.      Electrolux otherwise failed to design, manufacture, assemble, inspect, test and/or distribute the dryer in such a way as to provide the intended user with a non-dangerous and non-defective product.

20.     On or about March 24, 2010, as a direct and proximate result of the unreasonably dangerous, unsafe, and defective condition of the subject dryer, the subject dryer ignited a fire in the Loiotile home.

21.     On or about March 24, 2010, as a direct and proximate result of the unreasonably dangerous, unsafe, and defective condition of the subject dryer, certain real and personal property belonging to the Loiotiles was destroyed or damaged by said fire at the Loiotile home, and the Loiotiles incurred alternative living expenses.

22.     Pursuant to the Policy, MemberSelect paid to or on behalf of the Loiotiles sums totaling at least $524,689.34 to repair or replace damaged or destroyed property, and to otherwise compensate the Loiotiles for losses sustained by fire damage.

23.     By virtue of such payments and the terms of the Policy, MemberSelect is legally and equitably subrogated to all rights, remedies, and causes of action accruing to the Loiotiles against Electrolux.

WHEREFORE, Plaintiff, MemberSelect Insurance Company, as subrogee of Chris and Renata Loiotile, requests judgment be entered in its favor and against Defendant, Electrolux Home Products, Inc., in an amount totaling at least $524,689.34, plus pre and post judgment interest costs and such other relief that this Court deems just.

## COUNT II – NEGLIGENCE (Electrolux)

Plaintiff incorporates by reference each and every allegation contained in paragraphs 1 through 23 of Plaintiff's Complaint as if they were specifically repeated herein and further complains against Electrolux as follows:

24. At all materials times, Electrolux was under a duty to exercise reasonable care in the design, manufacture, assembly, testing, inspection, and distribution of the subject dryer for the safety of the Loiotiles' real and personal property.

25. Notwithstanding such duty, Electrolux, by and through its agents or employees, breached its duties through one or more of the following negligent acts or omissions:

    a. Failed to design the subject dryer so as to prevent it from igniting a fire;

    b. Designed, manufactured and/or assembled the subject dryer with the gas burner near an area of the dryer where lint accumulates, presenting a fire hazard;

    c. Carelessly and negligently designed, manufactured, and/or assembled the subject dryer with the gas burner near an area of the dryer where lint accumulates, presenting a fire hazard;

    d. Designed, manufactured and/or assembled the subject dryer to permit lint, after it became ignited, to then come into contact with the combustible materials within the dryer cabinet;

    e. Failed to manufacture the subject dryer so as to prevent it from igniting a fire;

    f. Designed, manufactured and/or assembled the subject dryer with improper combustible materials;

    g. Designed, manufactured and/or assembled the subject dryer without sufficient safeguards and/or safety features to prevent the dryer from igniting a fire;

    h. Manufactured the subject dryer for consumer use with materials insufficient for such use;

    i. Improperly inspected and tested the subject dryer to ensure against defects;

    j. Failed to warn the Loiotiles of a known fire hazard with the subject dryer and/or a fire hazard which a reasonably prudent manufacturer should have known or learned about; and

    k. Was otherwise negligent in the design, manufacture, assembly, testing, inspection, and/or distribution of the subject dryer.

26.     On or about March 24, 2010, as a direct and proximate result of the aforementioned careless and negligent acts or omissions on the part of Electrolux, the subject dryer ignited a fire in the Loiotile home.

27.     On or about March 24, 2010, as a direct and proximate result of the aforementioned careless and negligent acts or omissions on the part of Electrolux, certain real and personal property belonging to the Loiotiles was destroyed or damaged by said fire at the Loiotile home, and the Loiotiles incurred alternative living expenses.

28.     Pursuant to the Policy, MemberSelect paid to or on behalf of the Loiotiles sums totaling at least $524,689.34 to repair or replace damaged or destroyed property, and to otherwise compensate the Loiotiles for losses sustained by fire damage.

29.     By virtue of such payments and the terms of the Policy, MemberSelect is legally and equitably subrogated to all rights, remedies, and causes of action accruing to the Loiotiles against Electrolux.

WHEREFORE, Plaintiff, MemberSelect Insurance Company, as subrogee of Chris and Renata Loiotile, requests judgment be entered in its favor and against Defendant, Electrolux Home Products, Inc., in an amount totaling at least $524,689.34, plus pre and post judgment interest, costs and such other relief that this Court deems just.

## COUNT III - STRICT LIABILITY (Sears)

Plaintiff incorporates by reference each and every allegation contained in paragraphs 1 through 29 of Plaintiff's Complaint as if they were specifically repeated herein and further complains against Sears as follows:

30.     Upon information and belief, Sears marketed, distributed and/or introduced into the stream of commerce the subject dryer to be offered for sale to the general public and consumers, including the Loiotiles, in the ordinary course and scope of its business.

31.     On or about July 1, 2003, the subject dryer was purchased and used by the Loiotiles in the condition it was designed, tested, inspected, marketed and/or distributed by Sears.

32.     At the time the subject dryer left Sears' possession and control, it was unreasonably dangerous, unsafe, and defective.

33.     Also upon information and belief, on and before March 24, 2010, the subject dryer was in a condition unknown to the Loiotiles which was unreasonably dangerous, unsafe, and defective in light of its foreseeable and intended use in that:

   a.     It was designed, manufactured and/or assembled to permit lint to accumulate near the gas burner, presenting a fire hazard;

   b.     It was designed, manufactured, and/or assembled with the gas burner near an area of the dryer where lint accumulates, presenting a fire hazard;

   c.     It was designed, manufactured and/or assembled to permit lint, after it became ignited, to then come into contact with the combustible materials within the dryer cabinet;

   d.     It was designed, manufactured and/or assembled with improper combustible materials;

   e.     It failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner;

f.    It lacked sufficient safeguard and/or safety features to prevent lint accumulation near the gas burner;

g.    It lacked sufficient safeguards and/or safety features to prevent lint, after it became ignited, to come into contact with combustible materials within the dryer cabinet;

h.    Sears failed to warn consumers regarding the potential for lint accumulation within the dryer cabinet and its potential to ignite a fire;

i.    Sears failed to warn consumers regarding the potential for lint accumulation near the gas burner;

j.    Sears failed to instruct regarding the removal of lint within the dryer cabinet so as to prevent a fire; and

k.    Sears failed to warn the Loiotiles of a known fire hazard with the dryer and/or a fire hazard a reasonably prudent distributor should have learned or known about.

34.    On or about March 24, 2010, as a direct and proximate result of the unreasonably dangerous, unsafe, and defective condition of the subject dryer, the dryer ignited and caused a fire in the Loiotile home.

35.    On or about March 24, 2010, as a direct and proximate result of Sears improper installation, repair, inspection of the subject dryer, the dryer ignited and caused a fire in the Loiotile home.

36.    On or about March 24, 2010, as a direct and proximate result of the unreasonably Sears improper installation and/or the dangerous, unsafe, and defective condition of the subject dryer, certain real and personal property belonging to the Loiotiles was destroyed or damaged by said fire at the Loiotile home, and the Loiotiles incurred alternative living expenses.

37.    Pursuant to the Policy, MemberSelect paid to or on behalf of the Loiotiles sums totaling at least $524,689.34 to repair or replace damaged or destroyed property, and to otherwise compensate the Loiotiles for losses sustained by fire damage.

10

38.     By virtue of such payments and the terms of the Policy, MemberSelect is legally and equitably subrogated to all rights, remedies, and causes of action accruing to the Loiotiles against Sears.

WHEREFORE, Plaintiff, MemberSelect Insurance Company, as subrogee of Chris and Renata Loiotile, requests judgment be entered in its favor and against Defendant, Sears Holding Corporation, in an amount totaling at least $524,689.34, plus pre and post judgment interest, costs and such other relief that this Court deems just.

## COUNT IV – NEGLIGENCE (Sears)

Plaintiff incorporates by reference each and every allegation contained in paragraphs 1 through 38 of Plaintiff's Complaint as if they were specifically repeated herein and further complains against Sears as follows:

39.     Upon information and belief, Sears marketed, distributed and/or introduced into the stream of commerce the subject dryer to be offered for sale to the general public and consumers, including the Loiotiles, in the ordinary course and scope of its business.

40.     Sears delivered and installed the subject dryer and dryer transition duct and venting at the Loiotile's home and subsequently performed numerous inspection, service calls and/or repairs to the subject dryer.

41.     Also upon information and belief, Sears improperly installed the subject dryer using flexible spiral venting material against Electrolux manufacturer specifications.

42.     At all materials times, Sears was under a duty to exercise reasonable care in the, inspection, marketing, and/or distribution of the subject dryer for the safety of the Loiotiles' real and personal property.

43.     At all materials times, Sears was under a duty to exercise reasonable care in the, installation, service, repair of the subject dryer for the safety of the Loiotiles' real and personal property.

44.     Notwithstanding such duty, Sears, by and through its agents or employees, breached its duties through one or more of the following negligent acts or omissions:

    a.     Improperly inspected and tested the subject dryer to ensure against defects; and

    b.     Failed to warn the Loiotiles of a known fire hazard with the subject dryer and/or a fire hazard which a reasonably prudent manufacturer should have known or learned about.

45.     On or about March 24, 2010, as a direct and proximate result of the aforementioned careless and negligent acts or omissions on the part of Sears, the dryer ignited and caused a fire in the Loiotile home.

46.     On or about March 24, 2010, as a direct and proximate result of the aforementioned careless and negligent acts or omissions on the part of Sears, certain real and personal property belonging to the Loiotiles was destroyed or damaged by said fire at the Loiotile home, and the Loiotiles incurred alternative living expenses.

47.     Pursuant to the Policy, MemberSelect paid to or on behalf of the Loiotiles sums totaling at least $524,689.34 to repair or replace damaged or destroyed property, and to otherwise compensate the Loiotiles for losses sustained by fire damage.

48.     By virtue of such payments and the terms of the Policy, MemberSelect is legally and equitably subrogated to all rights, remedies, and causes of action accruing to the Loiotiles against Sears.

WHEREFORE, Plaintiff, MemberSelect Insurance Company, as subrogee of Chris and Renata Loiotile, requests judgment be entered in its favor and against Defendant, Sears Holding Corporation, in an amount totaling at least $524,689.34, plus pre and post judgment interest, costs and such other relief that this Court deems just.

Respectfully submitted,

/s/ Brian T. Bailey
Brian T. Bailey, Esq.
Gibson & Sharps, PSC
745 McClintock Drive, Suite 227
Burr Ridge, Illinois 60527
Phone: (630) 986-5050

**And**

To be Admitted Pro Hac Vice:

Jennifer H. Tedesco
Gibson & Sharps, PSC
1443 20th Street, Suite F
Vero Beach, FL 32960
Phone: (800) 759-0964