IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| **MEMBERSELECT INSURANCE COMPANY,** a/s/o **CHRIS** AND **RENATA LOIOTILE**, )<br><br>Plaintiff, )<br><br>vs. )<br><br>**ELECTROLUX HOME PRODUCTS, INC**, a Delaware corporation, **SEARS HOLDING CORPORATION**, a Delaware corporation, )<br><br>Defendants. ) | Case No.: **1:13-cv-4097** |

**PLAINTIFF'S MOTION FOR SANCTIONS AGAINST DEFENDANT SEARS FOR FAILURE TO PROVIDE DISCOVERY AND OTHER DISCOVERY ABUSES AND INCORPORATED MEMORANDUM OF LAW**

NOW COMES Plaintiff, MEMBERSELECT INSURANCE COMPANY, as the subrogee of its insured CHRIS AND RENATA LOIOTILE, by and through its undersigned attorney, files this Motion for Sanctions for Failure to Provide Discovery and other Discovery Abuses against the Defendant, SEARS HOLDING CORPORATION. This motion is based upon Fed. R. Civ. P. 37, the records and files herein, the incorporated supporting memorandum and exhibits, as well as the argument to be made at any hearings on this motion.

I. INTRODUCTION

a. **Plaintiff's discovery propounded on Sears.**

This is a subrogation action alleging strict liability, negligence, and breach of warranty against Defendant Sears. (Doc. 19, ¶¶ 42-80). The claims arise out of a March 24, 2010 fire

1

that originated inside a Kenmore gas dryer sold, delivered and installed by Sears in Chris and Renata Loiotile's home in July 2003. (Id.).

On March 3, 2014, Sears filed its initial disclosures pursuant to Fed. R. Civ. P. 26(a)(1)(A). (Doc. 43). No Sears' corporate representatives or employee fact witnesses were identified in these disclosures, and no contracts with Electrolux were identified as documents that Sears may use to support its claims or defenses. (Id.). On March 7, 2014, Sears filed amended initial disclosures pursuant to Fed. R. Civ. P. 26(a)(1)(A). (Doc. 44). Again, no Sears' corporate representatives or employee fact witnesses were disclosed and no contracts with Electrolux were identified. (Id.).

On April 9, 2014, Sears responded to Plaintiff's First Set Interrogatories (attached hereto and incorporated by reference as Plaintiff's Exhibit A) and Requests for Production of Documents (attached hereto and incorporated by reference as Plaintiff's Exhibit B). Plaintiff's Interrogatories and Requests for Production asked specific questions related to witnesses with knowledge of the facts in this case and requested the disclosure of any indemnification or reimbursement agreements between Sears and Electrolux. Specifically, Interrogatory No. 2 stated:

> State the full name, address, and telephone number of each person that has knowledge of the facts in this case and state in detail what knowledge each person possesses.

(Ex. A at 1). Sears' verified answer did not disclose the names of any Sears corporate or fact witnesses. (Id.). Plaintiffs Request for Production No. 20 stated:

> Please produce any indemnification or reimbursement agreement by and between Sears and Electrolux that may in any way apply to this claim or be used to satisfy and judgment that may be entered in this action.

2

(Ex. B at 6-7). Sears objected that the request was overbroad and unduly burdensome, and failed to disclose either the Universal Terms and Conditions contract or the Supply Agreement with Electrolux, and failed to otherwise identify these documents on its privilege log. (Id.).

Between April 2014 and September 2014, Plaintiff and Sears conferred multiple times in an effort to resolve Plaintiff's objections to Sears' insufficient discovery responses, but no resolution was reached. Sears repeatedly represented to Plaintiff's counsel that all responsive documents had been produced and witnesses disclosed. (Correspondence dated June 9, 2014, June 25, 2014, July 29, 2014, and August 20, 2014 attached hereto and incorporated by reference as Plaintiff's Ex. C). On September 12, 2014, Sears filed supplemental answers to Plaintiff's Interrogatories (attached hereto and incorporated by reference as Plaintiff's Exhibit D), and Requests to Produce (attached hereto and incorporated by reference as Plaintiff's Exhibit E), but those supplements generally restated Sears' boilerplate objections. For example, Sears objected to every single request for production with the same objection that the request was "overly broad, unduly burdensome, vague, ambiguous and speculative, not limited in time or scope and seeks information which is irrelevant, immaterial and not reasonably calculated to lead to the discovery of admissible evidence." (See Ex. B, E). Discovery closed in this matter on October 31, 2014. (Doc. 61).

### b. Plaintiff's motion to compel discovery from Sears.

On October 7, 2014, Plaintiff filed a Motion to Compel Discovery from Sears. (Doc. 70). Among other things, Plaintiff challenged Sears' insufficient disclosure of witnesses, its use of boilerplate objections, and its failure to respond to Request for Production No. 20, arguing specifically that the information requested would be relevant to Sears' knowledge of the alleged fire hazard in the dryer design and the issue of whether Sears caused or contributed to that fire

hazard. (Id. at 3, 5). In a supplement in support of its motion to compel, Plaintiff identified the importance of contracts between Sears and Electrolux with respect to training and service of dryers, and argued for the disclosure of such contracts. (Doc. 88 at 3-4).

Plaintiff's motion to compel was granted in part and denied in part. (Doc. 89). In denying in part, Judge Schenkier noted that "we accept the representation on the record by counsel for Sears that Sears has not withheld any documents based on the objections it made in the discovery responses (except for objections based on privilege, for which Sears has produced a log identifying withheld documents). (Id.). Following an in camera review of certain documents withheld by Sears according to privilege, Judge Schenkier ordered the disclosure of certain documents, going so far as to require that Sears "deliver to chambers the portions of claim notes file that the Court has ordered produced along with the copy of the file highlighted by the Court, so that we may ensure that the production is in conformance with our ruling." (Doc. 102).

### c. Sears' motion for summary judgment and untimely disclose of corporate witness with knowledge of material facts.

On May 21, 2015, Sears filed a Motion for Summary Judgment (doc. 110) and a Motion for Leave to file a Cross-Complaint for Breach of Contract against Electrolux (doc. 112). In support of its motion for Summary Judgment, Sears attached a sworn affidavit by Chang Hyun Lee, the Laundry Engineer Manager for Product Development for Sears. Mr. Lee's affidavit is attached hereto and incorporated for reference as Plaintiff's Exhibit F. In his sworn affidavit, Mr. Lee states that he has personal knowledge that:

> 5. At no time did Sears direct, control, or regulate Electrolux in the design or manufacture of the subject dryer.
> 6. At no time did Sears provide instructions or warnings to Electrolux relative to the alleged defects in the subject dryer referenced in Plaintiff's Complaint.

4

> 7. At no time, then or now, did Sears have any actual knowledge of the alleged defects in the subject dryer referenced in Plaintiff's Complaint.
> 8. At no time did Sears create any of the alleged defects in the subject dryer referenced in Plaintiff's Complaint.

(Plaintiff's Ex. F). Despite Mr. Lee's title as the *Laundry* Engineer Manager for Product Development and his personal knowledge of material facts related to this lawsuit Sears never disclosed Mr. Lee as a witness until it attached his affidavit in support of its summary judgment motion.

### d. Sears' motion for leave to file cross claim against Electrolux and untimely disclosure of contracts between Sears and Electrolux.

In support of its Motion for Leave to File a Cross-Claim against Electrolux, Sears attached and disclosed for the first time the Universal Terms and Conditions (hereinafter "UTC") agreement with Electrolux (Doc. 112-1) and its Vendor Supply Agreement with Electrolux (Doc. 112-2). (The UTC agreement is attached hereto and incorporated for references as Plaintiff's Exhibit G and the Vendor agreement as Plaintiff's Exhibit H). The UTC and Vendor contract set terms and conditions with respect to all Sears' Kenmore brand products manufactured by Electrolux, including Kenmore dryers and set forth Electrolux's obligation to defend and indemnify Sears (Ex. G at ¶ 3). Furthermore both contracts explicitly provide Sears the right to inspect, direct and/or control Electrolux's manufacture of dryers and other Sears' brand appliances. (Ex. G ¶ 6; Ex. H ¶¶ 12, 17A).

The Vendor Agreement sets forth the obligations of both Sears and Electrolux with respect to marketing Kenmore brand products, product quality and service, manufacturing terms, Sears obligation to "regularly test the products to ensure they meet with contract specifications, Electrolux's obligation to provide Sears' with training support related to service and installation

5

of Sears' products, and Sears' ownership of intellectual property associated with Sears' brand products. (Ex. H ¶¶ 6R, 7, 12A, 12C, 12E, 14A, 14C, 14D, 14E, 17A, 17B).

It is irrefutable that counsel for Sears was fully aware of the UTC and Vendor agreements containing indemnity language because those agreements were attached to and the subject of multiple letters from Sears' counsel to Electrolux's counsel on June 26, July 3, and July 15, 2013. (The 2013 correspondence from Sears counsel to Electrolux is attached hereto and incorporated for reference as Plaintiff's Exhibit I). The UTC and Vendor agreements between Sears and Electrolux constitute discoverable evidence, not privileged or otherwise protected from discovery, that contain material facts related to multiple issues and defenses advised by both Sears and Electrolux in this case.

##   II.   LEGAL STANDARD

"The judicial system is premised on the honest, good faith efforts of the parties involved. ... Where honesty is replaced with falsehood, a party's right to litigate comes into question." Rosenthal Collins Grp., LLC v. Trading Techs. Int'l, Inc., No. 05 C 4088, 2011 U.S. Dist. LEXIS 17623, at *19-20 (N.D. Ill. Feb.23, 2011). Courts have the inherent power to impose sanctions for an abuse of the judicial system based on their ability to manage their dockets. Chambers v. NASCO, Inc., 501 U.S. 32, 49, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991); Barnhill v. U.S., 11 F.3d 1360, 1367-68 (7th Cir. 1993). The Federal Rules of Civil Procedure also give courts the statutory authority to impose a variety of sanctions for abuses of the judicial system, including: (1) entering default judgment; (2) striking of pleadings; (3) dismissal of all or part of an action; and (4) entering an order of contempt of court. Fed. R. Civ. P. 37(b)(2)(A). The language of Rule 37(b)(2) requires a violation of a court order before sanctions are imposed, but "Courts can broadly interpret what constitutes an order for purposes of imposing sanctions" and a formal

written order is not required to provide notice that parties must not engage in abusive litigation practices like lying to the court and "tampering with the integrity of the judicial system." Quela v. Payco-General Am. Creditas, Inc., 2000 U.S. Dist. LEXIS 6932, at *17-18 (N.D. Ill. May 18, 2000). The analysis is "essentially the same" whether a court proceeds with sanctions under Rule 37 or its own inherent powers. Danis v. USN Communications, Inc., 2000 U.S. Dist. LEXIS 16900, at *92 (N.D. Ill. Oct. 20, 2000).

Courts also have the statutory authority to issue the same Rule 37(b) sanctions for a failure to respond to discovery under Rule 37(d). Rule 37(d) sanctions are authorized when discovery responses are evasive or incomplete, as such answers are deemed a failure to answer under the Rules. Airtex Corp. v. Shelley Radiant Ceiling Co., 536 F.2d 145, 155 (7th Cir. 1976). In addition, a party failing to disclose information or identify a witness may also be required to pay reasonable expenses, including attorney's fees. Fed. R. Civ. P. 37(c)(1), (d).

Sanctions imposed must be proportionate to the offending conduct. Collins v. Illinois, 554 F.3d 693, 696 (7th Cir. 2009). A court should consider prejudice to the plaintiff, as well as punishment and deterrence in selecting a sanction under Rule 37. National Hockey League v. Metropolitan Hockey Club, 427 U.S. 639, 643, 96 S. Ct. 2778, 49 L. Ed. 2d 747 (1976) (discussing punishment and deterrence); Collins, 554 F.3d at 969 (discussing prejudice, punishment, and deterrence). Seventh Circuit policy favors trials on the merits, and an entry of default judgment or dismissal should be used only in extreme situations. Sun v. Bd. of Trs., 473 F.3d 799, 811 (7th Cir. 2007). Consequently, there must be at least some finding of bad faith, willfulness, or fault before a sanction of default may be imposed. Downs v. Westphal, 78 F.3d 1252, 1257 (7th Cir.), modified on other grounds, 87 F.3d 202 (1996); Crown Life Ins. Co. v. Craig, 995 F.2d 1376, 1382 (7th Cir. 1993). However, prior less drastic sanctions are not a

7

prerequisite for entry of default. Halas v. Consumer Services, Inc., 16 F.3d 161, 165 (7th Cir. 1994). Default is a harsh penalty, but it is appropriate where the sanction is proportionate to the violation committed by the disobedient party. Ladien v. Astrachan, 128 F.3d 1051, 1057 (7th Cir. 1997).

### III. ARGUMENT

#### A. Sears Committed Numerous Violations of the Federal Rules of Civil Procedure and Misrepresented its Discovery Disclosures to the Court

Sears has repeatedly failed to comply with the disclosure requirements of Rule 26, failed to provide complete answers to Plaintiff's Interrogatories, failed to disclose requested and relevant documents in its possession, and misrepresented to counsel and the Court whether it was withholding discoverable documents and witnesses. These violations merit the imposition of harsh sanctions against Sears.

Pursuant to Federal Rule of Civil Procedure 26(a)(1)(A)(i), a party is required to disclose "the name and, if known, the address and telephone number of each individual likely to have discoverable information…that the disclosing party may use to support its claims or defenses." Plaintiff's Interrogatories also required Sears to identify all individuals with knowledge of the facts of the case. (Ex. A at 1). Pursuant to Federal Rule of Civil Procedure 26(a)(1)(A)(ii), a party is required to disclose a copy "of all documents . . . that the disclosing party has in its possession, custody, or control and may use to supports its claims or defenses." Plaintiff's Requests for Production specifically demanded the disclosure of any "indemnification or reimbursement agreement" between Electrolux and Sears. (Ex. B at 6-7).

Sears' initial and supplemental discovery responses in this matter were entirely inadequate. As noted above, Sears' discovery responses relied on boilerplate objections, failed to disclose any corporate witnesses, and withheld numerous documents. (Ex. A, B, D, E). The

8

failure to disclose these documents and corporate witnesses is especially egregious because Sears' counsel represented to Judge Schenkier during a hearing on Plaintiff's motion to compel that no discoverable information, other than those identified on Sears' privilege log, were being withheld. (See Doc. 89). That representation provided the basis for Judge Schenkier's order denying part of Plaintiff's motion to compel without further scrutiny. (Id.). Sears' counsel made this misrepresentation to the Court despite its knowledge and possession of the UTC and Vendor agreements. (Ex. I).

It is clear that Sears did not disclose all relevant witnesses or documents responsive to Plaintiff's discovery requests. Sears withheld the UTC and Vendor contracts with Electrolux that directly address Electrolux's duty to defend and indemnify Sears, and are clearly responsive to Plaintiff's Request for Production No. 20. (Ex. A, B, D, and E). Further, the fact that Sears is now seeking to use the contracts to support its attempt to file a cross-claim shows that they are relevant and should have been disclosed pursuant to Rule 26 and Plaintiff's discovery requests. (See Doc. 112).

Sears also failed to disclose Mr. Lee, the *Laundry* Engineer Manager for Product Development, as an individual with discoverable knowledge. (Doc. 43; Doc. 44; Ex. A at 1; Ex. D). In fact, Sears failed to disclose Mr. Lee as a potential witness in this laundry product, Kenmore gas dryer, design defect case until it filed its motion for summary judgment, over six months after the close of discovery. (Doc. 61, 110). Only then did Sears reveal Mr. Lee as an individual with personal knowledge regarding Sears relationship with Electrolux with respect to the design and manufacture of the dryer, as well as personal knowledge as to whether Sears knew of any defect in the dryer. (Ex. F). Therefore, Plaintiff was never afforded the opportunity to depose Mr. Lee to discover what relevant information he possessed related to this litigation.

Sears' repeated failure to disclose relevant, material and discoverable documents and witnesses in this case shows a total disregard for the Rules of Civil Procedure and the discovery process. This pattern of noncompliance demands severe sanctions.

**B. Sears' Violations of the Federal Rules and Misrepresentations Warrant Default Judgment**

1.  <u>Sears' Violations were Willful and Made in Bad Faith</u>

A court must determine that discovery abuses involved willfulness or bad faith in order to warrant the entry of default judgment. <u>Downs</u>, 78 F.3d at 1257. Nonetheless, the burden of showing that a failure to comply with discovery requests and court orders was due to inability or mistake, not willfulness or bad faith, rests with the party against whom sanctions are sought. <u>United States v. Reyes</u>, 307 F.3d 451, 458 (6th Cir. 2002).

The record shows that Sears and its counsel failed to correct or supplement discovery responses known to be incomplete or inaccurate and failed to prosecute this case in good faith by repeatedly withholding material evidence. (Ex. C, F, G, H, and I). Sears had numerous opportunities to disclose Mr. Lee as a potential witness and to provide copies of its contracts with Electrolux. Yet, it was not until discovery was closed and Sears needed more evidence to support its motion for summary judgment and its motion for leave to file a cross complaint that the identity of Mr. Lee and the existence of the contracts came to light. (Doc. 110, 112). This is especially serious given Sears' counsel's representations during an earlier discovery dispute that no relevant documents were being withheld except those identified in Sears' privilege log. (Doc. 89; <u>see also</u> Ex. C and I). This misrepresentation made to Plaintiff's counsel and the Court should be treated as a violation of a court order for the purposes of assessing sanctions. <u>See</u> <u>Charter House Ins. Brokers, Ltd. v. New Hampshire Ins. Co.</u>, 667 F.2d 600, 604 (7th Cir. 1981). To this date, it is unclear what other documents or witnesses Sears may be hiding.

Sears is not entitled to the benefit of the doubt due to its repeated violations. Accordingly, this Court should determine that Sears acted both willfully and in bad faith in failing to disclose these items to Plaintiff.

2.  <u>Default is an Appropriate Remedy in this Case</u>

In general, courts may impose appropriate sanctions, including dismissal or default, against litigants who violate the discovery rules and orders designed to enable judges to control their dockets and manage the flow of litigation. <u>See, e.g.</u>, <u>In re Thomas Consolidated Industries, Inc.</u>, 456 F.3d 719, 724-25 (7th Cir. 2006) (affirming dismissal as discovery sanction for supplying non-responsive answers to discovery and lying to the court regarding the service of that discovery); <u>Newman v. Metro. Pier & Exposition Auth.</u>, 962 F.2d 589, 591 (7th Cir. 1992) (affirming dismissal as discovery sanction due to a pattern of misconduct); <u>Hindmon v. National-Ben Franklin Life Ins. Corp.</u>, 677 F.2d 617, 618 (7th Cir. 1982) (affirming dismissal and default as discovery sanction for failing to comply with discovery requests); <u>Charter House</u>, 667 F.2d at 604 (7th Cir. 1981) (dismissal of complaint appropriate sanction for plaintiff's willful failure to comply with proper discovery requests); <u>Loctite Corp. v. Fel-Pro, Inc.</u>, 667 F.2d 577, 583 (7th Cir. 1981) (<u>per curiam</u>) (district court did not abuse its discretion in dismissing plaintiff's patent infringement suit for failure to produce relevant documents).

This Court should determine that an entry of default judgment is an appropriate sanction for Sears' repeated discovery abuses, especially considering the prejudice to the Plaintiff and the law's goal of punishment and deterrence. <u>See</u> <u>Collins</u>, 554 F.3d at 696. Prior, less drastic sanctions are not a prerequisite to an order of default judgment, <u>see</u> <u>Halas</u>, 16 F.3d at 165, although it should be noted that a previous motion to compel was granted in part. (Doc. 89). Regardless, Sears' repeated abuses of the discovery process justify an entry of default.

Sears' abuse of discovery in this case began with its woefully inadequate discovery disclosures. (<u>See</u> Ex. A, B, D, E). Those incomplete disclosures were the subject of numerous phone calls and emails by Plaintiff's counsel made in a good faith effort to confer with Sears and obtain all responsive discovery. Eventually, Plaintiff's only option in this case was to file its motion to compel. (Doc. 70). During the subsequent hearings on that motion, Sears not only withheld evidence from Plaintiff, but it also misled the Court by misrepresenting the character and quantity of documents that were not being disclosed. (<u>See</u> Doc. 89). As is clear from Judge Schenkier's order, the ruling denying Plaintiff's motion in part was entered largely based on Sears' counsel's characterization of what documents it had not disclosed. (<u>Id.</u>). Nonetheless, Judge Schenkier reviewed documents Sears was withholding pursuant to claimed privilege in camera and determined that numerous documents required disclosure. Judge Schenkier then took the extraordinary additional step of requiring those documents to be submitted into chambers for review, to ensure production according to the Court's order. (Doc. 102). Finally, Sears waited over six months past the close of discovery to disclose relevant and material documents and witnesses. (Doc. 110, 112).

This case is similar to <u>Hindmon</u>. There, the Seventh Circuit affirmed the district court's order dismissing the plaintiff's action. 677 F.2d at 618. The district court's dismissal was based on the plaintiff's delayed filings, repeated unilateral rescheduling of depositions, late and unresponsive discovery answers, and a misstatement made by plaintiff's counsel on the record regarding plaintiff's cancelling of a deposition. <u>Id.</u> at 621. These actions prejudiced the defendant's case since discovery had closed before documents were produced, and the plaintiff could not be deposed with respect to their contents. <u>Id.</u> The severity of the conduct is also similar to <u>Charter House</u>, where the Seventh Circuit affirmed the dismissal of a suit based on

repeated missed deadlines and following a promise from the plaintiff to the district court that documents would be disclosed timely pursuant to a court order. 667 F.2d at 601-02.

Similarly here, Sears' counsel provided unresponsive discovery to nearly all of Plaintiff's discovery requests, and Sears' counsel was not forthcoming with Judge Scheineker with respect to undisclosed documents and witnesses. (Doc. 89; Ex. A, B, D, E). Sears then waited until after discovery had closed to release additional contracts and a witness in support of its motions against Plaintiff and Defendant Electrolux. Sears' inadequate responses are the equivalent of failing to respond to discovery. See Airtex Corp., 536 F.2d at 155. Sears also misrepresented the status of discovery to the Court. (Doc. 89). Conduct very similar to Sears' conduct in this case has resulted in default or dismissal. See Hindmon, 677 F.2d at 618; Charter House, 667 F.2d at 601-02.

Sears' willful failure to disclose Mr. Lee as a person with knowledge and to release copies of its contracts with Electrolux has prejudiced Plaintiff's case against Sears. See Collins, 554 F.3d at 696. This is clear based on Sears' motion for summary judgment. Sears' memorandum in supports of its motion relies on the testimony of Mr. Lee regarding Sears' role in the manufacturing process and its knowledge of any defects in the dryer. (Doc. 111 at 4). Mr. Lee's affidavit purports to be based on his own personal knowledge. (Ex. F). Therefore, Plaintiff should have been afforded the opportunity to depose Mr. Lee to learn more about Sears' role in the manufacture of the dryer and knowledge of the warnings and instructions in the product literature. However, discovery has closed in this matter. (Doc. 61). As of now, it is unclear what additional information Mr. Lee possesses or what other discovery information Sears has withheld in this case.

Plaintiff is also prejudiced by Sears' failure to disclose its contracts with Electrolux. Sears argues that it had no role in the design or manufacture of the dryer and that it had no knowledge of the alleged defects in the dryer. (Doc. 110). However, the contracts Sears had in place with Electrolux gave Sears extensive rights to inspect Electrolux's manufacturing of dryers, required testing, and gave Sears intellectual property rights over all owners' manuals. (Doc. 112-1 ¶ 6; Doc. 112-2 ¶¶ 12, 17A). In essence, the contracts gave Sears the right to exercise a great deal of control over the manufacture of Kenmore-branded dryers. The fact that these contracts were not disclosed until long after the close of discovery has prejudiced Plaintiff's ability to determine what level of control Sears actually exerted over Electrolux with respect to dryer manufacturing.

This type of discovery abuse demands a harsh sanction as deterrence. See Collins, 554 F.3d at 696. Lesser sanctions would not sufficiently punish Sears and would only serve to further prejudice Plaintiff. See Ladien, 128 F.3d at 1057. For instance, reopening discovery would be difficult due to the variety of individuals and issues that would need to be deposed in light of Sears' contracts with Electrolux. This extensive discovery would severely delay these proceedings and likely add duplicative discovery costs for Plaintiff. Further, Plaintiff would have no choice but to treat all of Sears' submissions with skepticism, as it could not be sure if any disclosures are accurate or complete.

In light of the foregoing, Sears violations warrant entry of default under Rule 37 based on Sears': (1) failure to respond to discovery; (2) violation of court order in misstating facts to the Court; and (3) extremely late disclosures, following the close of discovery. See Collins, 554 F.3d at 696. Sears' pattern of discovery abuses has tainted these proceedings, and default, along with the entry of reasonable attorney's fees and costs, is an appropriate remedy and is the only

sanction that sufficiently relieves the resulting prejudice to the Plaintiff while punishing Sears and offering a deterrent to other parties. See Ladien, 128 F.3d at 1057.

## IV. CONCLUSION

Sears had committed numerous and repeated discovery violations in this case. Those violations have been willful and made in bad faith, and have prejudiced Plaintiff's case against Sears. These violations warrant an entry of default judgment against Sears both as punishment and as a deterrent for future parties in order to encourage fairness in the discovery process. See Rosenthal Collins, No. 05 C 4088, 2011 U.S. Dist. LEXIS 17623, at *19-20.

**WHEREFORE,** the Plaintiff, MemberSelect Insurance Company as subrogee of Chris and Renata Loiotile, respectfully requests this Court enter judgment in favor of Plaintiff and against Sears and to award Plaintiff reasonable attorney fees and costs as allowed under the applicable rules and laws governing this action, and any other relief this Court deems just and proper.

                                                GIBSON & SHARPS
                                                ATTORNEYS AT LAW

**By:**     /s/ *Jennifer H. Tedesco*
            Jennifer H. Tedesco
            *Pro Hac Vice (Fl. 678821)*
            1443 20th Street, Suite F
            Vero Beach, FL 32960
            Telephone: (800) 759-0964
            jht@gibsonsharps.com
            Attorney for Plaintiff